RECEIVED
SEP 0 9 2009
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

FILED

SEP 09 2009

DAVID CREWS, CLERK
BY
Deputy

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI WESTERN DIVISION**

| | |
|---|---|
| THE STATE OF MISSISSIPPI )<br><br>*Plaintiff,* )<br><br>v. )<br><br>BARR LABORATORIES, INC. )<br><br>*Defendant.* )<br> ) | Case No.: 3:09CV100-M-A<br>State Case No.: L09-459 |

## NOTICE OF REMOVAL

In accordance with the provisions of 28 U.S.C. § 1441, *et seq.*, notice is given as follows:

**I.   PROCEDURAL POSTURE.**

1.   Defendant Barr Laboratories, Inc. ("Barr") hereby removes this action, Case L09-459, from the Circuit Court of Lafayette County, Mississippi, to this Court, pursuant to 28 U.S.C. §§ 1332 and 1441, *et seq.*

2.   The undersigned counsel represent defendant Barr in this matter.

3.   Written notice of the filing of this Notice of Removal is being given promptly to Plaintiff by service hereof, and a copy of the notice of removal is being filed with the Circuit Court of Lafayette County, Mississippi, as required by 28 U.S.C. § 1446(d).

4.     Plaintiff filed its Complaint on July 27, 2009 on behalf of the State and School Employee's Life and Health Insurance Plan (the "Employee Health Plan").   Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served to date upon all the parties are attached hereto as Exhibit A.

5.     The Employee Health Plan is a self-insured health insurance plan which pays for the claims and expenses associated with providing state employees, retirees, and their dependents with health care coverage.   (Exhibit A, Complaint ¶11.)   All costs are paid from the money collected in premiums.   (State and School Employees' Life and Health Plan, Plan Document, Revised January 2009 ("Plan Document'), attached hereto as Exhibit B, at 3.)   There is no direct appropriation of funds to the Plan by the State of Mississippi. *Id.*

6.     The Complaint asserts claims of False Advertising, Crimes Against Sovereignty, Intentional Misrepresentation, Negligent Misrepresentation, Tortious Interference with a Business Relationship, Common Law Fraud and Unjust Enrichment.   (Exhibit A, Complaint ¶¶ 27-65.)   The action was captioned *State of Mississippi v. Barr Laboratories, Inc.*, Civil Action No. L09-459.

**II.     REMOVAL IS TIMELY.**

7.     Removal is timely if filed within 30 days after service of process on the first properly joined defendant.   *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262-63 (5th Cir. 1988).

8.     Plaintiff's Complaint was served on both Barr on August 10, 2009.

2

9.      This Notice of Removal was filed within 30 days of service of process on the first properly joined defendant and is therefore timely filed. *See* 28 U.S.C. § 1446(b).

## III.   THIS COURT HAS ORIGINAL JURISDICTION OVER PLAINTIFF'S CLAIMS.

10.     Removal of this action is proper under 28 U.S.C. §§ 1441, *et seq.* because this court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  This is a civil action between citizens of different states in which the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Furthermore, the Defendant does not reside in the State of Mississippi where the action was brought. *See* 28 U.S.C. § 1441(b).

### A.      Complete Diversity Is Satisfied.

11.     The Defendants is not a citizen of the State of Mississippi.  Defendant Barr was at the time the Complaint was filed and is presently a corporation organized and doing business under the laws of the State of Delaware with its principal place of business in the State of New Jersey.  Thus, for diversity purposes, Barr is a citizen of Delaware and New Jersey. *See* 28 U.S.C. § 1332(c)(1).

12.     The named Plaintiff, the State of Mississippi, is not the real party in interest in this action.  Rather, the real party in interest is the Employee Health Plan and the State is merely a nominal party.  Where, as here, a state is not a named plaintiff but is merely a nominal party, the citizenship of the state must be disregarded. *See generally Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008); *see also Louisiana v. Union Oil Co.*, 458 F.3d 364, 366 (5th Cir. 2006) ("[I]f the State is a nominal party with no real interest in the dispute, its citizenship may be disregarded.") (citing *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir.1985) ("In determining diversity jurisdiction, the citizenship of the real parties in interest is determinative,

and the citizenship of nominal or formal parties who have no real interest in the dispute before the court may be disregarded, even though they may be required by law or court order to join in the lawsuit.")).

13.     Here, the State is a nominal party because the injuries alleged in the Complaint flow to the Employee Health Plan as its own entity, and not to the State itself. *See Land O'Lakes Creameries, Inc. v. La. State Bd. of Health,* 160 F. Supp. 387, 388 (E.D. La.1958) (The State is not a real party in interest when it "undertakes to sue for the particular benefit of a limited number of citizens .... The State must show a direct interest of its own ...."). The Employee Health Plan is a self-insured health insurance plan which pays for the claims and expenses associated with providing state employees, retirees, and their dependents with health care coverage. (*See* Exhibit A, Complaint ¶12.) All costs are paid from the money collected in premiums. (*See* Exhibit B, Plan Document at 3.) There is no direct appropriation of funds to the Employee Health Plan by the State of Mississippi. *Id.* Accordingly, the Employee Health Plan is the real party in interest in this action and the State is merely a nominal party that should be disregarded for purposes of diversity jurisdiction.

14.     Furthermore, the Employee Health Plan is a "sufficiently separate entity" from the state and not merely an alter ego of the state, and may therefore be considered a citizen for diversity purposes. *See C.H. Leavell & Co. v. Board of Comm'rs,* 424 F.2d 764, 767 (5th Cir. 1970); *Tradigrain, Inc. v. Miss. State Port Auth.,* 701 F.2d 1131, 1132 (5th Cir. 1983) ("In determining whether the agency is an alter ego of the state or an independent agency, the essential question is whether the state is the real party in interest in the lawsuit.") (citations omitted). "[T]here are many factors to consider in determining whether an agency is the alter ego of the state including: (1) whether state statutes and case law characterize the agency as an

arm of the state; (2) the source of entity funding; (3) the degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide problems; (5) the authority to sue and be sued in its own name; and (6) the right to hold and use property." *PYCA Indus., Inc. v. Harrison County Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1416 (5th Cir. 1996) (citing *Tradigrain*, 701 F.2d at 1132).

(a)   The Employee Health Plan is governed by a Management Board that has complete authority to "control, operate, and manage the Plan." (Exhibit B, Plan Document at 1.) Major decisions are made by the Board, not the state Legislature or the Governor. The Board is authorized "to adopt and promulgate rules and regulations for [the Plan's] administration" and is given broad powers. Miss. Code 25-15-5(1).

(b)   The Board is vested, by statute, with the power to "design a plan of health insurance for state employees" that includes "incidental coverages that the board deems necessary" and "major medical benefits in such amounts as the board determines." Miss. Code 25-15-9(1)(a). Further, "the board is authorized to accept bids for such alternate coverage and optional benefits as the board deems proper." *Id.*

(c)   The Board is "authorized to procure legal services if it deems those services to be necessary to carry out its responsibilities" and can "enter into contracts with accountants, actuaries and other persons from the private sector whose skills are necessary to carry out [its] purposes . . . ." Miss. Code § 25-15-5(6)(d); Miss. Code § 25-15-5(6)(a).

(d)    The Board also is authorized to determine the manner in which health insurance premiums are collected. The premiums are held in a separate account or fund. "These funds and interest earned on these funds may be used for the disbursement of claims and shall be exempt from the appropriation process." Miss. Code § 25-15-15(1). The Board has authority to draw on these funds in order to operate the Employee Health Plan.

(e)    "All funds in excess of the amount needed for disbursement of claims shall be deposited in a special fund," and all earnings from investments and interest are also credited to that fund. Miss. Code § 25-15-15(8).

15.    Because the Employee Health Plan is the real party in interest and is a "sufficiently separate entity" from the state, it is a citizen of Mississippi for purposes of diversity. Accordingly, there is complete diversity of citizenship among the parties.

**B.    The Amount In Controversy Requirement Is Satisfied.**

16.    The amount in controversy exceeds $75,000, exclusive of interest. The Complaint alleges that Barr's actions "impacted" the Employee Health Plan "by causing it to pay grossly excessive reimbursement rates for Defendants' prescription drugs to medical and pharmaceutical providers," and seeks an unspecified amount of compensatory and punitive damages. (Exhibit A, Complaint ¶1) Although the amount of damages is not specifically pled, the removing party may establish by a preponderance of the evidence that the amount in controversy exceeds $75,000 by showing that it is facially apparent from the Complaint that the claims exceed the jurisdictional amount. *See White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003).

6

17.     Here, it is facially apparent from the Complaint that the amount in controversy exceeds the jurisdictional minimum:

(a)     The Complaint seeks to recover amounts overpaid by the Employee Health Plan for prescription drugs manufactured by Barr since 1990.

(b)     Plaintiff alleges that "[i]n the past year alone, the [Employee] Health Plan spent over $98 million on prescription drugs," Exhibit A, Complaint ¶ 2, and that "[s]ince 1998, the cumulative annual cost of pharmacy-dispensed prescription drugs to the [Employee] Health Plan is approximately $864 million dollars." (*Id.* ¶ 13)

(c)     The Complaint also seeks both compensatory and punitive damages for the Employee Health Plan's alleged injuries. *See Montgomery v. First Family Fin. Servs., Inc.*, 239 F. Supp. 2d 600, 605 (S.D. Miss. 2002) (noting that federal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages under Mississippi law is deemed to exceed the amount necessary for federal jurisdiction).

(d)     Thus, if Plaintiff can prove its alleged injuries resulted from the conduct of Barr, the award is more likely than not to exceed the $75,000 jurisdictional requirement, exclusive of interest.

## IV.    REMOVAL TO THIS COURT IS PROPER.

18.    Venue exists in the United States District Court for the Northern District of Mississippi, Western Division, because the Circuit Court of Lafayette County, Mississippi — the court in which this action is pending — sits within this federal district and division. *See* 28 U.S.C. § 104(a)(2).

19.    This Notice of Removal will be promptly served on the attorneys for the Plaintiff, and a copy will be promptly filed with the Clerk of the Circuit Court of Lafayette County, Mississippi, pursuant to 28 U.S.C. § 1446(d).

PURSUANT TO THE GROUNDS SET FORTH ABOVE, Defendant Barr hereby removes this action from the Circuit Court of Lafayette County, Mississippi, to this Honorable Court.

Dated: September 9, 2009

Respectfully submitted,

By: _____

Robert F. Stacy, Jr., Bar # 7764
DANIEL COKER HORTON & BELL, P.A.
265 North Lamar Boulevard, Suite R
P.O. Box 1396
Oxford, MS 38655-1396
Telephone:    (662) 232-8979
Facsimile:    (662) 232-8940

John B. Clark, Bar # 6263
DANIEL COKER HORTON & BELL, P.A.
4400 Old Canton Rd., Suite 400
P.O. Box 1084
Jackson, MS 39215-1084
Telephone:    (601) 969-7607
Facsimile:    (601) 969-1116

*Attorneys for Defendant Barr Laboratories, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 9th day of September, 2009 a true and correct copy of the foregoing Notice of Removal was forwarded to the following counsel of record by Ordinary U.S. Mail, postage prepaid, and properly addressed to the following:

**McCULLEY McCLUER PLLC**
Stuart H. McCluer
1109 Van Buren Avenue
Oxford, Mississippi 38655

**DAVID SHELTON PLLC**
David W. Shelton
P.O. Box 2541
120-A Courthouse Square
Oxford, Mississippi 38655

**RICHARDSON PATRICK**
**WESTBROOK & BRICKMAN, LLC**
James L. Ward, Jr.
P.O. Box 1007
Mt. Pleasant, SC 29465

Exhibit A

*Rec'd 8/10/09
11:18pm
DB*

## IN THE CIRCUIT COURT OF LAFAYETTE COUNTY, MISSISSIPPI

THE STATE OF MISSISSIPPI,                                        **PLAINTIFF,**

V.                                                  CIVIL ACTION NO. _L09-459_

BARR LABORATORIES, INC.,                                   **DEFENDANTS.**

### SUMMONS

THE STATE OF MISSISSIPPI

TO:  **Barr Laboratories, Inc.**
     **2 Quaker Road**
     **P.O. Box 2900**
     **Pomona, NY  10970-0519**

### NOTICE TO DEFENDANT

THE COMPLAINT ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand deliver a copy of a written response to the Complaint to Stuart H. McCluer, McCulley McCluer PLLC, 1109 Van Buren Avenue, Oxford, Mississippi 38655.  Your response must be mailed or delivered within thirty (30) days from the date of delivery of this summons and complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

ISSUED under my hand and seal of said Court this the _27_ day of July, 2009.

BY: *Amy E Gardner* DC
Circuit Clerk of Lafayette County, MS

Stuart H. McCluer (MBN 101366)
**McCULLEY McCLUER PLLC**
1109 Van Buren Avenue
Oxford, Mississippi 38655
(662) 236-1401

## PROOF OF SERVICE - SUMMONS
### (Process Server)

_____

Name of Person or Entity Served

       I, the undersigned process server, served the summons and complaints upon the person or entity named above in the manner set forth below (process server must check proper space and provide all additional information that is requested and pertinent to the mode of service used):

      ____ FIRST CLASS MAIL AND ACKNOWLEDGEMENT SERVICE.  By mailing (by first class mail, postage prepaid), on the date stated in the attached Notice, copies to the person served, together with copies of the form of notice and acknowledgement and return envelope, postage prepaid, addressed to the sender (Attach completed acknowledgement of receipt pursuant to Miss. R. Civ. P., Form 1B).

      ____ PERSONAL SERVICE.  I personally delivered copies of the summons and complaint on the _____ day of _____, 2009, to _____, where I found said person in _____ county of the State of Mississippi.

      ____ RESIDENCE SERVICE.  After exercising reasonable diligence I was unable to deliver copies of the summons and complaint to _____ within _____ County, Mississippi.  I served the summons and complaint on the _____ day of _____, 2009, at the usual place of abode of said _____ by leaving a true copy of the summons and complaint with _____, who is the _____, a member of the family of the person served above the age of sixteen years and willing to receive the summons and complaint, and thereafter on the _____ day of ____, 2009, I mailed (by first class mail, postage prepaid) copies to the person served at his or her usual place of abode where the copies were left.

      ____ CERTIFIED MAIL SERVICE.  By mailing to an address outside Mississippi (by first class mail, postage prepaid, requiring a return receipt) copies to the person served.  (*Attach signed return receipt*).

      ____ I was unable to serve the summons and complaint.

Process server must list below: (Please print or type)

NAME: _____

ADDRESS: _____

_____

TELEPHONE: _____

STATE OF MISSISSIPPI

COUNTY OF _____

     Personally appeared before me the undersigned authority in and for the state and county aforesaid,

the within named, _____, who being first by me duly sworn states on

oath that the matters and facts set forth in the foregoing "Proof of Service-Summons" are true and correct as

therein stated.

                                       _____
                                       PROCESS SERVER

     Sworn to and subscribed before me this the _____ day of _____, 2009.

(SEAL)                        _____
                                       NOTARY PUBLIC

IN THE CIRCUIT COURT OF LAFAYETTE COUNTY, MISSISSIPPI

THE STATE OF MISSISSIPPI,                                              PLAINTIFF,

V.                                      CIVIL ACTION NO. L09-459

BARR LABORATORIES, INC.,                                              DEFENDANT.

LAFAYETTE COUNTY
FILED

JUL 2 7 2009

Mary Alice Busby
CIRCUIT CLERK

BY_____ D.C.

USDC/NDMS# 3:09CV100-M-A

COMPLAINT

**Jury Trial Demanded**

Plaintiff, the State of Mississippi, by and through its Attorney General (hereinafter "Mississippi") files this Complaint against the above-named Defendant and alleges, on information and belief, the following:

INTRODUCTION

1.     Defendant has engaged in false, misleading, willful, unfair, and deceptive acts and practices in the pricing and marketing of its prescription drug products.  Defendant's fraudulent pricing and marketing of its prescription drugs has impacted Mississippi's State and School Employees' Life and Health Insurance Plan ("the State Health Plan") by causing it to pay grossly excessive reimbursement rates for Defendant's prescription drugs to medical and pharmaceutical providers.

2.     Fair and honest drug pricing is a matter of great importance to Mississippi and its citizens.  Expenditures by Mississippi and its agencies for prescription drug reimbursement have increased dramatically in the past several years as a result, in part, of Defendant's fraudulent pricing scheme.  In the past year alone, the State Health Plan spent over $98 million on

1

prescription drugs.  Since 1990, Defendant's pricing scheme has contributed to a health care funding crisis in Mississippi, and Defendant must be held to account for its role in that crisis.

3.      Mississippi has limited financial resources and is obligated to pursue any party whose unlawful conduct has diminished those limited funds.  Consequently, Mississippi, by and through its Attorney General, brings this action to recover amounts overpaid for prescription drugs under the State Health Plan as a result of the fraudulent and willful conduct of Defendant. Mississippi further seeks (1) to prohibit Defendant from continuing to perpetrate its drug-pricing scheme, (2) to require Defendant to publicly disclose true drug prices, and (3) to require Defendant to account for and disgorge all profits obtained by its improper and unlawful actions.

4.      Mississippi seeks redress for the fraudulent and willful marketing and pricing conduct of Defendant, who has profited from its wrongful acts and practices at the expense of Mississippi and its citizens.

## PARTIES

5.      This action is brought for and on behalf of the sovereign State of Mississippi and its State Health Plan, by and through Jim Hood, the duly elected and current Attorney General of the State of Mississippi, pursuant to Miss. Code Ann. § 7-5-1 and the common law and statutory authority of the Attorney General to represent the State of Mississippi and the State Health Plan.

6.      Defendant Barr Laboratories, Inc., ("Barr") is a New York corporation engaged in the business of manufacturing and selling pharmaceuticals.  Barr's principal place of business is located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519.

7.      At all times material to this civil action, Barr transacted business in the State of Mississippi by, including but not limited to, selling, marketing, and distributing to purchasers

like the State of Mississippi, through the State Health Plan, the pharmaceutical products that are the subject of this action.   Pharmaceuticals unlawfully marketed and/or sold by Barr and reimbursed by the Department of Finance and Administration pursuant to the State Health Plan are identified in Exhibit A, attached hereto.   Plaintiff reserves the right to supplement or otherwise modify this list of subject drugs following the close of discovery.

## JURISDICTION AND VENUE

8.     Jurisdiction is proper in this Court pursuant to Miss. Code Ann. § 9-7-81 and Section 156 of the Mississippi Constitution. In addition, all the claims asserted herein arise exclusively under Mississippi statutory or common law.

9.     This Court has personal jurisdiction over Defendant as it conducts business in Mississippi, purposefully directs or directed its actions toward Mississippi, and/or has the requisite minimum contacts with Mississippi necessary to constitutionally permit the Court to exercise jurisdiction.

10.    Venue is proper pursuant to Miss. Code Ann. § 11-11-3 due to the fact that substantial alleged acts of Defendants which caused injury to Mississippi and its citizens occurred in Lafayette County; a substantial number of Lafayette County residents are participants in the State Health Plan; and the State Health Plan paid for affected drugs distributed in Lafayette County.

## FACTUAL BACKGROUND

11.    The State Health Plan is a self-insured health insurance plan which pays for claims and expenses associated with providing Mississippi's current State employees, retirees, and their dependents with health care coverage.   As provided by Mississippi state law, the State

3

and School Employees' Health Insurance Management Board has complete authority to control, operate, and manage the State Health Plan. The Department of Finance and Administration, Office of Insurance is authorized by law to provide day-to-day management of the State Health Plan. Throughout this complaint, reference to the State Health Plan should be construed as reference to the Department of Finance and Administration where appropriate.

12.     The State Health Plan provides, among other benefits, prescription drug benefits to plan participants. The State Health Plan currently provides health care coverage to approximately 195,000 individuals. Since 1998, the cumulative annual cost of pharmacy-dispensed prescription drugs to the State Health Plan is approximately $864 million dollars.

13.     The State Health Plan reimburses medical providers, including physicians and pharmacists, for drugs prescribed and dispensed to plan participants pursuant to statutory and administrative formulas. The State Health Plan utilizes a pharmaceutical benefits manager (PBM) to administer its prescription drug benefits. From 1997 through 2005, the State Health Plan's PBM was Caremark/Advance PCS. Since that time, the State Health Plan's PBM has been Catalyst Rx.

14.     Reimbursement for pharmacy-dispensed prescription drugs under the State Health Plan is based on pricing information supplied by pharmaceutical manufacturers, such as Defendant, to pharmaceutical industry reporting services. This information includes the following price indices: (i) Average Wholesale Price ("AWP"), which is commonly understood as the average price charged by wholesalers to retailers, such as hospitals, doctors and pharmacies, for prescription drugs; (ii) Wholesale Acquisition Cost ("WAC"), which is commonly understood as the average price paid by wholesalers to the manufacturers for

4

prescription drugs; and (iii) on occasion (prior to 2003), Direct Price, which is commonly understood as the price charged by drug manufacturers to non-wholesaler customers for prescription drugs. At all times relevant to this action, Defendant was aware of the State Health Plan's reimbursement formulas and procedures for pharmacy-dispensed drugs and/or the formulas and procedures of other third-party payors which utilize PBMs for their self-insured prescription drug benefits.

15.    Defendant knowingly, willfully, wantonly, and/or intentionally provided, or caused to be provided, false and inflated AWP, WAC, and/or Direct Price information for its drugs to various nationally-known drug industry reporting services, including First DataBank (a/k/a Blue Book), Medical Economics, Inc. (a/k/a Red Book), and Medispan (collectively referred to herein as the "Reporting Services"). The Reporting Services published the pricing information to various reimbursers, such as the State Health Plan and/or its PBM, that subscribed to receive the pricing information (either in electronic or hard copy form). The pharmaceutical manufacturers (including Defendant) and the Reporting Services knew that the subscribing reimbursers (including the State Health Plan and/or its PBM) used the pricing information as a basis to determine the amount of reimbursements to medical and pharmaceutical providers who had supplied pharmaceuticals to insureds and plan participants.

16.    The pricing information published was and is used by the State Health Plan in its reimbursement formulas with respect to reimbursement for pharmacy-dispensed drugs. At all relevant times to this action, the State Health Plan relied upon the AWP, WAC, and/or Direct Price provided by Defendant to the Reporting Services to determine the amount medical and

pharmaceutical providers would be reimbursed pursuant to the State Health Plan's reimbursement formulas.

17.     Defendant knew the false and deceptive inflation of AWP, WAC, and/or Direct Price for its drugs would cause the State Health Plan to pay excessive amounts for these drugs. Defendant's inflated AWPs, WACs, and/or Direct Prices greatly exceeded the actual prices at which they sold its drugs to retailers (physicians, hospitals, and pharmacies) and wholesalers. Defendant's reported AWPs, WACs, and/or Direct Prices were false and misleading and bore no relation to any actual price, wholesale or otherwise.

18.     Defendant knowingly, willfully, wantonly, and/or intentionally concealed the true AWP, WAC, and/or Direct Price information of its drugs from the State Health Plan. As the suppliers of the pricing information provided to the Reporting Services, Defendant unquestionably knows the AWP, WAC, and Direct Price published by the Reporting Services for use by the State Health Plan. Defendant also knows whether the prices it supplies to the Reporting Services accurately and truthfully represent the actual prices as reflected by market experience and conditions. The State Health Plan is at an informational disadvantage, however, because unless governmental or industry surveys, lawsuits, or criminal or regulatory investigations publicly reveal the true AWP, WAC, and/or Direct Price for a particular drug, the State Health Plan has no basis upon which it can judge the accuracy of the price published by the Reporting Services. For years Defendant has hidden true market pricing information from payors such as the State Health Plan so that the fraudulent scheme described herein would not be discovered.

6

19.     Defendant provided its customers with undisclosed discounts, rebates and other inducements, all of which had the effect of surreptitiously lowering the wholesale or sales prices that its customers actually paid. Defendant did not account for those price-reducing factors when they supplied pricing information to the Reporting Services. Accordingly, the actual wholesale or sales prices paid by its customers were much lower than the reported AWP, WAC, and/or Direct Price. In addition, Defendant employed secret agreements to conceal the lowest prices charged for its pharmaceutical products. As a result of these concealed inducements, Defendant has prevented third parties, including the State Health Plan, from determining the true prices Defendant's customers paid.

20.     At all times relevant hereto, Barr has known that it can promote its drugs by selling them at substantial undisclosed discounts, while at the same time maintaining false and inflated reimbursement prices. Barr has routinely created such spreads.

21.     Barr has instructed its sales force to illegally market the spread for its products. Barr specifically instructed sales staff to use the difference between AWP and actual acquisition cost as a selling point, and has prepared worksheets demonstrating the proper calculation of spread. These worksheets also described the AWPs of Barr competitors to demonstrate the advantage of purchasing Barr products with their inflated AWPs.

22.     In connection with the wrongful conduct described herein, Barr has been sued by the States of Alabama, Alaska, Hawaii, Idaho, Illinois, Kentucky, Massachusetts, Mississippi, the City of New York and 42 New York Counties. Barr has settled some of these claims, including a recent settlement with the State of Alabama and a settlement of a class action brought by third-

7

party payors in the District of Massachusetts. The State Health Plan timely opted out of that class action settlement and now files this suit to recover its damages.

23.     As an example of Barr's wrongful conduct, Kentucky and Illinois each report that for Barr's Chlordiazepoxide (25 cap) (Dosage 100s) (NDC 000555-01569-02) 2000 AWP was $22.60 yet the available price was $4.09. This represents a spread of $18.59 or 452%.

24.     In February 2001, the AWP for the same Barr's Chlordiazepoxide 25 mg Capsule increased 50% to $34.02, however, the available price increased only 7% to $4.36. These price changes resulted in a new increased AWP spread of 680%.

25.     The above-described wrongful conduct resulted in Mississippi and its State Health Plan paying more for drugs than would have been paid absent Barr's wrongful conduct.

26.     Barr is among the pharmaceutical companies referred to above now under investigation by the House Committee of Energy and Commerce for possible improper pricing practices and failures to comply with Best Price rebate requirements. The Committee has requested detailed reports on pricing practices, including records concerning the "spread" between actual market prices and payments by Medicaid. The basis of this investigation is "indicia from a number of sources, including utilization data, drug price/reimbursement spreads, and other relevant information."

<u>CAUSES OF ACTION</u>

27.     The State of Mississippi asserts only state law claims in this Complaint and makes no claims herein under the United States Constitution or any federal law. Additionally, none of the claims at issue are subject to federal preemption.

8

## Count One
## False Advertising

28.   Mississippi hereby repeats, incorporates by reference, and realleges each and every allegation set forth above in this Complaint.

29.   Defendant violated Mississippi's statutory prohibition on false advertising. Specifically, Defendant violated Miss. Code Ann. § 97-23-1 by misrepresenting the true nature of its business by representing to the Reporting Services and other media that they sold its products at particular prices (e.g., AWPs, WACs, and/or Direct Prices) that were false, inflated, and intentionally misleading.

30.   Further, Defendant violated Miss. Code Ann. § 97-23-3 by intentionally and knowingly making, publishing, disseminating, circulating or placing before the public AWPs, WACs, and/or Direct Prices for its products which were untrue, deceptive and misleading due to their inflated and exorbitant nature.

31.   Defendant's violations of the above laws caused Mississippi and its State Health Plan to incur substantial damages in the form of overpayments for prescription drugs.

## Count Two
## Crimes Against Sovereignty

32.   Mississippi hereby repeats, incorporates by reference, and realleges each and every allegation set forth above in this Complaint.

33.   Defendant violated Miss. Code Ann. § 97-7-10.   Specifically, Defendant defrauded the State of Mississippi, including the State Health Plan, by knowingly and willfully falsifying the AWPs, WACs, and/or Direct Prices of its products in documents relied on by

Mississippi and the State Health Plan in paying claims, as well as concealing or covering up its scheme to falsify its AWPs, WACs, and/or Direct Prices and market the "spread" on its products.

34.     Defendant's violations of the above laws caused Mississippi and its State Health Plan to incur substantial damages in the form of overpayments for prescription drugs.

Count Three
Intentional Misrepresentation

35.     Mississippi hereby repeats, incorporates by reference, and realleges each and every allegation set forth above in this Complaint.

36.     Defendant has violated Mississippi's laws against intentional misrepresentation.

37.     Defendant misrepresented the AWP, WACs, and/or Direct Prices of its products, knowing that these misrepresentations were both false and material.

38.     Defendant's intent was that Mississippi, its State Health Plan, and other third-party payors rely upon the misrepresentations in calculating reimbursements and/or payments that involved AWP, WAC or Direct Price.

39.     Mississippi and its State Health Plan had no knowledge of the falsity of Defendant's misrepresentations regarding AWP, WAC or Direct Price.

40.     Mississippi and its State Health Plan had the right to rely upon Defendant's misrepresentations in calculating reimbursements and/or payments for Defendant's products and did in fact so rely.

41.     By engaging in the acts and practices described above, Defendant has engaged and continues to engage in repeated acts of intentional misrepresentation in violation of Mississippi common law.

10

42.    Defendant's conduct was and is knowing, intentional, gross, oppressive, malicious, wanton, and/or committed with the intention to cause injury.

43.    Defendant's intentional misrepresentation caused Mississippi and its State Health Plan to incur substantial damages in the form of overpayments for prescription drugs.

### Count Four
### Negligent Misrepresentation

44.    Mississippi hereby repeats, incorporates by reference, and realleges each and every allegation set forth above in this Complaint.

45.    Defendant has violated Mississippi's laws against negligent misrepresentation.

46.    Defendant misrepresented the AWP, WACs, and/or Direct Prices of its products.

47.    Defendant's misrepresentations regarding AWPs, WACs, and/or Direct Prices were both material and significant.

48.    Through these misrepresentations Defendant failed to exercise that degree of diligence and expertise the public is entitled to expect.

49.    Mississippi and its State Health Plan reasonably relied upon Defendant's misrepresentations in calculating reimbursements and/or payments for Defendant's products.

50.    Mississippi and its State Health Plan suffered damages in the form of overpayments for affected drugs as a direct and proximate result of its reasonable reliance on Defendant's misrepresentations.

### Count Five
### Tortious Interference With a Business Relationship

51.    Mississippi hereby repeats, incorporates by reference, and realleges each and every allegation set forth above in this Complaint.

11

52.    Defendant's wrongful acts described above were intentional and willful.

53.    Defendant's wrongful acts described above were calculated to cause damage to Mississippi and its State Health Plan, among other third party payors, in the course of its lawful business.

54.    Defendant's wrongful acts described above were undertaken with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the Defendant.

55.    The State Health Plan was damaged and loss resulted as a direct and proximate result of Defendant's wrongful acts.

Count Six
Common Law Fraud

56.    Mississippi hereby repeats, incorporates by reference, and realleges each and every allegation set forth above in this Complaint.

57.    Defendant committed common law fraud against Mississippi and the State Health Plan.  Defendant reported or caused to be reported pricing information (e.g., AWPs, WACs, and/or Direct Prices) for its products on a periodic and continuing basis for publication and dissemination to Mississippi and the State Health Plan.   Defendant knew that the pricing information which it reported or caused to be reported was false.  Defendant misrepresented the pricing information with the intent of inducing the State Health Plan and other third party payors to rely on the false information in setting prescription drug reimbursement rates.   The State Health Plan reasonably relied on the false pricing data in setting prescription drug reimbursement rates and making payment based on said rates.  Defendant's misrepresentations are continuing,

12

as it regularly and periodically continues to issue false and inflated pricing information for publication. As a result of Defendant's fraudulent conduct, Mississippi has been damaged by paying grossly excessive amounts for Defendant's prescription drugs.

58.     By engaging in acts and practices described above, Defendant has engaged and continues to engage in repeated fraudulent acts and practices in violation of Mississippi common law.

59.     Defendant's conduct was and is knowing, intentional, gross, oppressive, malicious, wanton, and/or committed with the intention to cause injury.

60.     The State Health Plan was damaged and loss resulted as a direct a proximate result of Defendant's fraudulent conduct.

Count Seven<br>Unjust Enrichment

61.     Mississippi hereby repeats, incorporates by reference, and realleges each and every allegation set forth above in this Complaint.

62.     As a result of the false and misleading statements and representations regarding the reporting of Defendant's drug pricing information to the Reporting Services, Mississippi and its State Health Plan have paid excessive amounts in connection with purchases or reimbursements of purchases of Defendant's prescription drugs.

63.     Defendant knew that medical and pharmaceutical providers who obtained reimbursements for Defendant's drug products were not entitled to improperly inflated reimbursement rates that were based on Defendant's false pricing information that was supplied to the Reporting Services.

13

64.    As a result of the excessive payments to medical and pharmaceutical providers by the State Health Plan of all or part of the "spread" as explained above, Defendant obtained increased sales and market share for its products, and, therefore, increased profits, and was unjustly enriched at the expense of Mississippi and the State Health Plan.

65.    Defendant knew it was not entitled to the profits that resulted from the sales obtained through the use of the spreads it created, and Defendant should be required to account for and make restitution to Mississippi of all such amounts obtained through the use of such spreads.

<u>Prayer for Relief</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff, the State of Mississippi, by and through Jim Hood, its duly elected Attorney General, requests that this Court grant the following relief against Defendant as follows:

(1)    an award of compensatory damages to Mississippi in such amount as is proved at trial;

(2)    an award of punitive damages;

(3)    an accounting of all profits or gains derived in whole or in part by each Defendant through its fraudulent, unfair and/or deceptive acts or practices complained of herein;

(4)    a constructive trust of the moneys illegally and impermissibly obtained from Defendant's scheme;

(5)    an order imposing a constructive trust on and/or requiring disgorgement by each Defendant of all profits and gains earned in whole or in part through the fraudulent, unfair and/or deceptive acts or practices complained of herein;

(6)    an award of costs and prejudgment interest; and

[remainder of this page intentionally left blank]

14

(7)     such other and further relief as the Court may deem appropriate and just.

RESPECTFULLY SUBMITTED, this the ___ day of July, 2009.

JIM HOOD
ATTORNEY GENERAL OF MISSISSIPPI

BY:

George W. Neville (MBN 3822)
Special Assistant Attorney General

OF COUNSEL:

**McCULLEY McCLUER PLLC**
Stuart H. McCluer (MBN 101366)
R. Bryant McCulley (Pro Hac pending)
1109 Van Buren Avenue
Oxford, Mississippi 38655

**RICHARDSON PATRICK**
**WESTBROOK & BRICKMAN, LLC**
James L. Ward, Jr. (Pro Hac pending)
A. Hoyt Rowell, III (Pro Hac pending)
Robert S. Wood (Pro Hac pending)
P.O. Box 1007
Mt. Pleasant, SC 29465

**DAVID SHELTON PLLC**
David W. Shelton (MBN 99675)
P.O. Box 2541
120-A Courthouse Square
Oxford, Mississippi 38655

15

# Exhibit B



**PLAN DOCUMENT**
**Revised January 2009**

Includes Separate HIPAA Notice of Privacy Practices

# IMPORTANT VENDOR ADDRESSES AND TELEPHONE NUMBERS

| | |
|---|---|
| **CLAIMS ADMINISTRATOR** | **Blue Cross & Blue Shield of Mississippi (BCBSMS)**<br>**P.O. Box 23071**<br>**Jackson, MS 39225-3071**<br>**(800) 709-7881** |
| **PROVIDER NETWORK** | **AHS State Network**<br>**P.O. Box 23070**<br>**Jackson, MS 39225**<br>**(800) 294-6307** |
| **MEDICAL MANAGEMENT/ UTILIZATION REVIEW PROGRAM** | **CareAllies**<br>**3567 Parkway Lane, Suite 200**<br>**Norcross, GA 30092**<br>**(800) 523-8739** |
| **PHARMACY BENEFIT MANAGER** | **Catalyst Rx**<br>Direct Member Reimbursement<br>P.O. Box 1069<br>Rockville, MD 20849-1069<br>**(866) 757-7839** |
| **PHARMACY MAIL ORDER PROGRAM** | **Walgreens Mail Service**<br>**P.O. Box 29061**<br>**Phoenix, AZ 85038-9061** |
| **PLAN SPONSOR** | **Health Insurance Management Board**<br>**Department of Finance and Administration**<br>**Office of Insurance**<br>**P.O. Box 24208**<br>**Jackson, MS 39225-4208**<br>**(601) 359-3411**<br>**(866) 586-2781**<br>**64-6000749**<br>**http://knowyourbenefits.dfa.state.ms.us** |
| **LIFE INSURANCE COMPANY** | **Minnesota Life**<br>**400 Robert Street North**<br>**St. Paul, Minnesota 55101-2098**<br>**(866) 293-6047** |
| **WELLNESS AND HEALTH PROMOTION PROGRAM** | **WebMD Health Services Group, Inc.**<br>2701 NW Vaughn St.<br>Suite 700<br>**Portland, OR 97210**<br>**(866) 789-4594** |

Services of legal process may be made on the agent listed below or the Plan Sponsor.

Attorney General of Mississippi
P.O. Box 220
Jackson, MS 39225

# Table of Contents

Page

Introduction 1
How The Plan Works 3
    A Self-Insured Plan 3
    Claims Administrator 3
    Medical Plan Choices 3
    The Provider Network 3
    Medical Management/Utilization Review 4
    Pharmacy Benefit Manager 4
    Motivating Mississippi – Keys to Living Healthy 4
    Out-of-Area Participants 4
    Out-of-Area Student Dependents 5
    Emergency Care 5
    Out-of-Network Review Services 5
    Identification Cards 6
    Lifetime Maximum 6
    Integration of Benefits 6
    Base Coverage 7
        Deductible and Coinsurance/Co-payment Maximum
            Individual Coverage 7
        Calendar Year Deductible – Individual Coverage 7
        Coinsurance/Co-payment Maximum – Individual Coverage 7
        Deductible and Coinsurance/Co-payment Maximum
            Family Coverage 8
        Calendar Year Deductible – Family Coverage 8
        Coinsurance/Co-payment Maximum – Family Coverage 8
        Coinsurance 9
        Summary of Base Coverage Medical Benefits 10
    Select Coverage 12
        Deductibles and Coinsurance Maximum for Medical Services 12
        Individual Calendar Year Medical Deductible 12
        Family Calendar Year Medical Deductible 12
        Coinsurance 13
        Individual Medical Coinsurance Maximum 13
        Individual Prescription Drug Deductible 14
        Summary of Select Coverage Medical Benefits 15
Health Insurance Eligibility and Enrollment 17

    Enrollee Eligibility 17
    Dependent Eligibility 17
    Initial Enrollment for New Employees 18
    Disabled Dependent 19
    Student Verification 19
    Right to Request Documentation 19

Paying for Coverage                                                          19
Special Rules for When Both Spouses are Employees                            19
Plan Enrollment Periods                                                      20
    Open Enrollment for Active Employees                 20
    Open Enrollment for COBRA Participants                20
    Special Enrollment Periods                            20
    Special Enrollment Periods Resulting from Loss of Coverage   21
    Special Enrollment Period as a Result of Gaining a New Dependent   21
    Special Enrollment Period for a Dependent Returning to
        Full-time Student Status       22
Creditable Coverage                                                         22
Transferring Within The Plan                                                22
School Employee Coverage During Summer Months                               23
Address Changes                                                             23
When Coverage Ends                                                          23
Terminating Dependent Coverage                                              24
Covered Services                                                            25
    Ambulance                                            25
    Ambulatory Surgical Facility                         25
    Cardiac Rehabilitation – Outpatient                  25
    Chiropractic Services                                26
    Dental Services                                      26
    Diagnostic Services – X-rays and Laboratory Services 27
    Durable Medical Equipment                            27
    Emergency Room Services                              27
    Home Infusion Therapy                                27
    Hospice Care                                         28
    Hospital Services                                    28
    Long Term Acute Care Facility                        28
    Mastectomy                                           28
    Maternity                                            29
    Maternity Management Program                         29
    Medical Supplies                                     30
    Mental Health Services                               30
    Nursing Services – Private Duty and Home Health      30
    Occupational Therapy                                 31
    Physical Therapy                                     31
    Physician Services                                   31
        Multiple Surgery              31
    Prosthetic or Orthotic Devices                       31
    Skilled Nursing Facility                             32
    Sleep Disorders                                      32
    Speech Therapy                                       32
    Substance Abuse                                      32
    Temporal Mandibular Joint Syndrome                   32
    Transplants                                          33

| | |
|---|---|
| Organ Acquisition Coverage | 33 |
| Travel Expenses Related to Transplant | 33 |
| Living Donor Coverage | 33 |
| Well-Child Care | 34 |
| Wellness/Preventive Coverage for Adults | 34 |
| In-Area Adults | 34 |
| Out-of-Area Adults | 34 |
| Wound Vacuum Assisted Closure | 35 |
| Medical Management and Utilization Review | 36 |
| Notification Requirements | 36 |
| Certifying a Hospital Admission | 37 |
| Certifying Maternity Care and Hospitalization | 37 |
| Certifying an Emergency Hospital Admission | 37 |
| Notification Requirements for Inpatient Hospital Admissions | 37 |
| Inpatient Financial Penalties | 38 |
| Specified Outpatient Diagnostic Tests | 38 |
| Notification Requirements for Outpatient Diagnostic Tests | 38 |
| Outpatient Financial Penalty | 38 |
| Non-certification of Medical Necessity | 38 |
| Retrospective Review | 39 |
| Medical Case Management | 39 |
| Smart Steps, a Disease State Management Program | 39 |
| Diabetic Self-Management Training/Education | 40 |
| Pulmonary Rehabilitation Programs | 40 |
| Limitations and Exclusions | 41 |
| Prescription Drug Program | 45 |
| Co-payments | 45 |
| Generic Drugs | 46 |
| Preferred Brand Drugs | 46 |
| Mail Order Service | 47 |
| Prior Authorization | 48 |
| Step Therapy | 48 |
| Early Refills | 48 |
| Walgreens Specialty Pharmacy Program | 48 |
| Limited Distribution Drugs | 49 |
| Diabetic Sense | 49 |
| Tobacco Cessation | 49 |
| Catalyst Rx Customer Service | 50 |
| Coordination of Benefits | 50 |
| Covered Drugs | 50 |
| What Drugs Are Not Covered? | 50 |
| Retiree Eligibility and Medical Coverage | 52 |
| Retiree Eligibility | 52 |
| Retiree Enrollment | 52 |
| Surviving Spouse Eligibility | 53 |
| Surviving Spouse Enrollment | 53 |

Cost of Retiree/Surviving Spouse Coverage 53
Open Enrollment 54
Special Enrollment Periods Resulting From Loss of Coverage 54
Special Enrollment Period as a Result of Gaining a New Dependent 54
Special Enrollment Period for a Dependent Returning to Full-time
    Student Status 55
Right to Request Documentation 55
Transferring Dependent Coverage 55
Retiree Reemployment 55
Changes in Enrollment Status 56
Non-Medicare Eligible Retirees, Surviving Spouses, and Dependents 56
Medicare Coordination 56
Prescription Drug Program 57
Limitations and Exclusions 57
Canceling Coverage 57
Continuing Coverage Under The Plan 58
Active Military Duty 59
What Are COBRA Benefits? 59
Who is a Qualified Beneficiary? 59
What is a Qualifying Event? 59
Disability Extension 61
Cost for COBRA Continuation Coverage 61
COBRA Benefits 61
Dependent Coverage for COBRA Participants 62
Claims Administration 63
Verifying Coverage of a Service 63
How to File a Medical Claim 63
How to File a Prescription Drug Claim 63
Time Limit for Filing Claims 64
Direction of Pay 64
Patient Audit Program 65
Medical Appeals 65
Prescription Drug Appeals 66
Utilization Review Appeals 67
Other Complaints 67
Coordination of Benefits 68
Medicare Coordination 70
Medicare Coordination – End-Stage Renal Disease 70
Refund of Overpayments and Subrogation 71
Refund to The Plan of Overpayment of Benefits 71
Subrogation – Third Party Liability 71
Subrogation – Work Related 72
Health Plan Administration 73
Notice of Election of Exemption 74
General Conditions 75
Covered Expense 75

| | |
|---|---|
| Liability | 75 |
| Notices | 75 |
| Proof of Loss | 75 |
| Breach or Default | 75 |
| Network Agreements | 76 |
| Terms | 76 |
| Disclosure | 76 |
| Privacy of Protected Health Information | 76 |
| Security of Electronic Protected Health Information | 78 |
| Glossary | 79 |
| Group Term Life Insurance | 91 |
| At a Glance | 91 |
| Who Is Eligible? | 92 |
| Enrolling in Life Insurance | 93 |
| Late Enrollees | 93 |
| How Much is an Employee Insured For? | 93 |
| Cost of Coverage for Employees | 93 |
| Accidental Death and Dismemberment Benefits | 94 |
| Retiring Employees | 94 |
| Cost of Coverage for Retired Employees | 94 |
| Totally Disabled Employees | 94 |
| Naming a Beneficiary | 95 |
| Termination of Life Insurance Coverage | 95 |
| Converting to a Private Policy | 96 |
| Applying for Benefits – During the Conversion Period | 96 |
| Filing a Claim | 96 |
| Other State-Sponsored (Alternative) Life Insurance Policy | 97 |
| Who to Contact | 98 |

# *Introduction*

This *Plan Document* contains the official rules and regulations of the State and School Employees' Health Insurance Plan (Plan). This *Plan Document* replaces and supersedes all previously issued *Plan Documents*, *Plan Document Amendments*, *Summary Plan Descriptions,* and *Master Plan Documents*. When there are changes in benefits, a notice explaining the details of the changes will be issued. Notices of changes to the health Plan and life insurance coverage may be included in the Plan's *Know Your Benefits* newsletter.

Please take a moment to read through this booklet to become familiar with the information it contains. This *Plan Document* is a reference guide for questions on life and health benefits.

The Plan offers two coverage choices for active employees, COBRA participants, and non-Medicare eligible retirees: Base Coverage and Select Coverage. Each coverage type is independent of the other. Lifetime maximums will be cross-applied between all coverage types. Throughout this *Plan Document*, the term Plan refers to Base Coverage and Select Coverage unless otherwise noted.

The Plan includes a separate coverage level for Medicare eligible retirees, Medicare eligible surviving spouses, and Medicare eligible dependents of retirees and surviving spouses.

> **If you are, or will become in the next 12 months, a Medicare eligible retiree, Medicare eligible surviving spouse, or a Medicare eligible dependent of a retiree or surviving spouse, the availability of prescription drug coverage under Medicare will impact your prescription drug coverage under the Plan. Please refer to the Retiree Eligibility and Medical Coverage section for more details.**

No verbal statements of any person will modify or otherwise affect the benefits or limitations and exclusions of the Plan, nor shall any such statements convey or void any coverage, or increase or reduce any benefits under the Plan.

This *Plan Document* does not create, nor is it intended to provide an employment contract between the State of Mississippi and any employee.

As provided by Mississippi state law, the State and School Employees Health Insurance Management Board (Board) has complete authority to control, operate, and manage the Plan. The Department of Finance and Administration, Office of Insurance is authorized by law to provide day-to-day management of the Plan. The Board has provided full discretion to the Office of Insurance to determine eligibility status, interpret Plan benefits and rules, and determine whether a claim should be paid or denied according to the provisions of the Plan set forth in this *Plan Document*. The Board reserves the right to amend, reduce, or eliminate any part of the Plan at any time.

The State and School Employees' Health Insurance Plan is a self-insured plan.  This means that the State is responsible for paying claims and other expenses associated with providing health care coverage.  No vendor contracted by the Board insures or guarantees these self-insured benefits.

*Note:  Whenever a personal pronoun in the masculine gender is used, it will be deemed to include the feminine unless the context clearly indicates the contrary.*